UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LESSARD, et al.,

       Plaintiffs,

                                      Civil No. 00-74306
                                      Hon. John Feikens

       v.

CITY OF ALLEN PARK, et al.,

       Defendants.

_____/

## OPINION AND ORDER

All parties have agreed to a $12.75 million class action settlement for all Plaintiffs' claims against all Defendants[1] arising out of widespread basement flooding that occurred on September 10-12, 2000.  I approved that settlement on April 5, 2005, because I found the settlement is fair, adequate, reasonable, and in the public interest.  I write now to explain my reasoning behind that conclusion, and I incorporate by reference my prior Order Approving Class Action Settlement and Awarding Attorney Fee.

**FACTUAL BACKGROUND**

I have described the nature of the claims at issue in several previous opinions, and will not restate them here.  See, e.g., Lessard v. City of Allen Park, 249 F.Supp.2d 871 (E.D.Mich. 2003); Lessard v. City of Allen Park, 247 F.Supp.2d 843 (E.D.Mich. 2003).

---

[1]The only case arising out of these events not settled by this agreement is a dispute between one Defendant and an insurer of other Defendants.  (Michigan Mun. Risk Mgmt. Auth. v. Wayne Co., Case No. 00-74283.)

I gave my preliminary approval to the proposed settlement on February 23, 2005. The settlement was reached only after lengthy discussions presided over by Court Facilitator Eugene Driker. (Order Appointing Facilitator, Oct. 29, 2003.) In March, notice of the class action certification and notice of settlement to class members and dismissal of class action were mailed to more than 10,000 households in southeast Michigan. (Proof of Publ'n and Proof of Mailing of Notice to Class Members of Pendency of Class Action Settlement, Ex. 3.) In addition, these notices were published for two consecutive weeks in four newspapers that together reach all of the affected communities.[2] All these notices stated that written objections or requests to opt-out[3] must be filed with this Court no later than March 29, 2005. No such objections or requests were received. At the hearing conducted on April 5, 2005 to discuss the fairness, reasonableness, and adequacy of the settlement, there were no objections or requests to opt-out.

**ANALYSIS**

I begin by noting that I am in the happy position of considering a settlement which all potential class members (as well as all Defendants) have chosen to accept without objection or opt-out. In deciding whether to give final approval to a class action settlement, a court should determine whether that settlement is fair, adequate, and reasonable to those it affects and whether

---

[2]In addition to the court-mandated publications, front page articles about the settlement ran in both The Detroit News and the Detroit Free Press. David Shepardson, "Downriver residents get $13 million for flooding; Wayne Co., Detroit to pay 9,000 residents for sewage-damaged basements in 2000," The Detroit News, February 28, 2005, p. A1; David Ashenfelter, "Sewer customers settle flood suit for $12.75 million," Detroit Free Press, March 1, 2005, p. A1.

[3]When those eligible to be class members "opt out", it means they are electing not to be bound by the terms of a settlement and instead wish to preserve their option to pursue their claim in separate litigation. See F.R. Civ.P. 23(c), (e).

it is in the public interest.  <u>Williams v. Vukovich</u>, 720 F.2d 909, 921-3 (6th Cir. 1983).  In determining fairness, a court should consider whether the interests of counsel and the named plaintiffs are "unjustifiably advanced at the expense of unnamed class members."  <u>Id.</u> at 923.  In determining adequacy, a court should weigh Plaintiffs' likelihood of success on the merits against the amount and form of the relief offered.  <u>Id.</u> at 922.

**A.  Fairness**

<u>*1. Equality of Treatment for Class Counsel Clients and Other Counsel Clients*</u>

There is an equality of treatment for all class members.  I appointed a Special Facilitator to guide the negotiations that led to this settlement, in part to ensure there would be no disadvantage to any class member in that process and that the settlement would be entirely consensual.  (Order Appointing Facilitator, Oct. 29, 2003.)  Class counsel's clients are not distinguished from the other class members in any way by the settlement, nor do they have any particular type of claim or damage that differs from those of the other class members.  <u>Cf. Amchem Prod., Inc. v. Windsor</u>, 521 U.S. 591, 626 (1999) (class members had different damages from class counsel's clients that created conflicting interests in the distribution of the fund).  The amount of damages that can be claimed by each class member is based on a uniform claim form for all members, and this Court's Special Master will recommend the final amount to be paid to each member.  Therefore, this settlement is fair and equitable in its treatment of class counsel's original clients and all other class members.

<u>*2.  Class Counsel's Interests*</u>

The settlement calls for an attorney fee of one-third of the settlement, after costs.  The various Plaintiffs' attorneys will divide this sum by a formula of their own choosing; in the event

3

that Plaintiffs' attorneys cannot agree on that settlement amount, the Special Master will make a recommendation regarding the proper distribution of those fees.  (Order Appointing Special Master and Establishing Procedures for Administration of Settlement, February 23, 2005.)

This case is well advanced; all discovery has completed, and there have been a large number of dispositive motions filed, with responses and replies filed as well.  Due to the number of claims, and the complexity of the southeast Michigan sewers, counsel were required to expend many hours of work in preparing the case and in the settlement negotiations.  I also note that this litigation has lasted for several years.  The compensation awarded is just given counsel's expenditure of effort on behalf of all class members.

Therefore, I find the settlement is fair.

## B.  Adequacy: Likelihood of Success on the Merits

### 1. Michigan Supreme Court Decision

In January of 2001, I certified a question to the Michigan Supreme Court regarding immunity for municipal and county government defendants under Michigan law when those defendants perform governmental functions.  Certification of Question to the Michigan Supreme Court, United States v. Wayne County, Case No. 87-70992 (E.D. Mich. Jan 9, 2001).  In a decision addressing trespass-nuisance claims for basement flooding, the Michigan Supreme Court ruled that the municipal governments were immune from common law trespass-nuisance claims, but the decision would only be applied prospectively, to all cases brought on or after April 2, 2002.   Pohutski v. Allen Park, 465 Mich. 675, 641 N.W.2d 219 (2002).[4]

---

[4]I found this decision to be problematic for a number of reasons, two of which I will explain here.

First, individuals who suffered the same harm from the same event (for which the statute

This decision affected the claims of the potential class in two ways. First, I determined that complying with this decision from the state's highest court required me to dismiss the basement flooding trespass-nuisance claims of those individuals were not yet named Plaintiffs in a pending lawsuit prior to April 2, 2002. Lessard v. City of Allen Park, 267 F.Supp.2d 716 (E.D.Mich. 2003). Second, those Plaintiffs whose claims for trespass-nuisance could continue had to satisfy the three-pronged "Hadfield doctrine": "(1) a condition (nuisance or trespass), (2) cause (physical intrusion), and (3) causation or control (by government)." Pohutski, 465 Mich. at 681, citing Hadfield v. Oakland County Drain Comm'r, 430 Mich. 139, 422 N.W.2d 205 (1988).

Thus, while the Pohutski decision did preserve the claims of the already-named plaintiffs (by not choosing to apply immunity prospectively), it created a high bar for them in their trespass-nuisance claims. The decision also lessened the likelihood of success on the merits for

---

of limitations had not yet expired) were treated very differently. Those who had already filed suit were allowed to proceed under a standard for negligence the Michigan Supreme Court decided had been created by "a form of judicial usurpation" of the legislative role. Id. at 694. However, those who had suffered similar harm on the same date, but had not yet filed suit, faced a standard of absolute immunity. Thus, instead of creating a new standard for those events that had not yet occurred (and for which insurance decisions were not yet made), the Supreme Court essentially legislated a new, retroactive statute of limitations for past harms. This is an ironic outcome, given that the decision ostensibly prevented a situation in which "a distinct class of litigants [would be] denied relief because of an unfortunate circumstance of timing." Id. at 699. I note the settlement I approved will treat both groups equally.

Second, although the Michigan Supreme Court admitted Michigan courts had erred in departing from the absolute immunity standard intentioned by the legislature, the court took the curious position that the Michigan Legislature was intending to create a new avenue for governmental liability for sewer back-ups when it passed a new law regarding liability for those backups, 2001 PA 222. Having followed the progress of this law closely as part of my work on this and other cases, there is little doubt that the Michigan Legislature intended this law to protect local governments from liability, not to create liability. The Michigan Supreme Court did not address this intent, and instead argued that the law showed the legislature intended the plaintiffs to have some recovery. Id. at 699.

5

individuals who were not yet named plaintiffs in any suit.  See Lane v. City of Detroit, Case No.
251421, 2005 WL 415679 (Mich. Ct. App. Feb. 22, 2005).

2. Michigan Court of Appeals Decisions

Since the Pohutsky decision, the Michigan Supreme Court has not addressed the question
of sewer back-up claims.  The Michigan Court of Appeals, however, released three unpublished
decisions in October of 2004, and one in May of 2005, addressing claims against municipal and
county governments for basement flooding related to sewer back-ups.  Read together, these four
cases make it clear that it is increasingly difficult to establish a likelihood of success on the
merits for all Plaintiffs on trespass-nuisance and takings claims.

a.  Helber

In Helber v. Ann Arbor, the Michigan Court of Appeals considered claims involving
trespass-nuisance and unconstitutional takings claims under both the federal and state
constitutions for sewer backups into basements in August 1998 and June 2000.  Nos. 247700,
247701, 247702 and 247703 (Mich. Ct. App. Oct. 26, 2004).  The court found no liability for the
municipal or county government due to the plaintiff's failure to show causation, and
additionally, for the trespass-nuisance claim, the plaintiff's failure to allege the necessary
nuisance elements.

Discussing causation as an element of the trespass-nuisance claims, the court noted that
in their Complaint, the plaintiffs asserted improper construction, engineering, and/or
maintenance of the sewer system.  Id. at 3.  The court found this insufficient, however, holding
that plaintiffs had to supply an example of a specific act by either the municipal or county
governmental entity that caused the flooding.  In discussing the takings claims, the court

6

similarly found that the Complaint did not allege a specific action the government took that "proximately or substantially caused" the alleged taking.  Id. at 7.

In addition to lack of proper pleading of causation, the court found that for the nuisance-trespass claim, the plaintiffs had failed to set forth allegations that satisfied some of the remaining elements of the claim.  Specifically, the court said the plaintiffs failed to plead a intentional invasion of their property by either the municipal or county government through an affirmative action, or alternatively, failed to allege negligence, reckless or ultrahazardous conduct.  Id. at 4.

### b.  Nationwide

In Nationwide Ins. Co. of Am. v. Township of West Bloomfield, which involved sewer backups on May 19, 1997, the court held that the trespass-nuisance tort, as elucidated by Hadfield,[5] required a plaintiff present some evidence that "the governmental entity engaged in some act or omission that proximately caused the physical intrusion," or "set in motion" the intrusion.  No. 247580 at 3 and 4, 2004 WL 2389877 (Oct. 26, 2004).  Finding that the plaintiff presented no evidence that the sewer system was constructed in a defective manner, or that the defendants' system contained malfunctioning pipes or manholes, the court held that the plaintiffs had offered insufficient evidence of causation and therefore their claim could not proceed.

### c. Jones

In Jones v. City of Farmington Hills, the court addressed claims of trespass-nuisance and takings following a sewer backup incident in August 1998.  No. 247506, 2004 WL 2390009 (Mich. App. Oct. 26, 2004.)  Applying the Hadfield definition of trespass-nuisance, the court

---

[5]430 Mich. 139 (1988).

clarified that the element of "control" meant that the "plaintiffs must establish that the nuisance *arose from the property controlled by defendant*", which was akin to the requirement of proof that "the governmental defendant *set in motion* the physical intrusion." Id. at 3 and 4 (emphasis in original). In that case, because the plaintiffs had presented no affidavits to that effect, the court chose instead to rely on the evidence of the defendant's expert, who stated that the cause of the sewer back-up was the unusually large rainstorm, and not the result of a failure or defect in the sewer system. Id. at 4-5. The court thus dismissed both the trespass-nuisance claims and the takings claims for failure to sufficiently plead causation.

> ### d.  Rigdon

Finally, in Rigdon v. City of Durand, the Michigan Court of Appeals upheld a grant of summary judgment in favor of the defendant city, finding that the plaintiffs had failed to offer the required evidence of proximate cause, and hence, governmental immunity precluded the action. Nos. 252956, 252957, 252958, 252959, 252960, 252961, 252962, and 252963 (Mich. Ct. App., May 10, 2005). In particular, the court noted the plaintiffs' failure to offer evidence "showing any failures in defendant's sewer system," noting that "physical intrusion does not constitute a showing that a defendant was the proximate cause of the intrusion." Id. at *2.

Taken together, these four cases create a high bar for any plaintiff bringing a nuisance-trespass or takings cause of action related to episodes of basement flooding following a large rainstorm. Plaintiffs must have alleged not simply that Defendants were operating the system and that it overflowed, but that the municipal and/or county government did something, or failed to do something, that set the back-up in motion. This standard (as opposed to a strict liability standard) creates a great deal of uncertainty regarding Plaintiff's likelihood of success on their

claims, and must be considered when evaluating the adequacy of the settlement.

In conclusion, the Michigan courts' handling of similar cases created a high risk that Plaintiffs would not prevail.[6]   The settlement figures must be weighed against this great risk, and therefore, the settlement is adequate.  See, e.g., DeBoer v. Mellon Mortg. Co., 64 F.3d 1171 (8th Cir. 1995) (weakness of the plaintiffs' case strongly supports approval of class action settlement).

## C. Reasonable

The absence of any objections or opt-outs speaks to the reasonableness of the settlement. See, e.g., 4 Alba Coate & Herbert Newberg, Newberg on Class Actions §11:43 (4th ed. 2002). The lead counsel for all parties involved in this settlement of all Plaintiffs' claims against all Defendants are experienced, able advocates, who recognized, as I did, the great expense of time and money that any further proceedings were likely to require.  Id.  Given these factors, the settlement is reasonable.

## D. Public Interest

This settlement is in the public interest.  The Defendant governments faced a potentially enormous liability, which would have resulted inexorably in higher taxes or utility rates for the public.  The settlement protects the public from that outcome while offering compensation

---

[6]However, I am not bound to follow the Michigan Court of Appeals decisions if I believe the Michigan Supreme Court would rule differently, so the Defendants faced uncertainty as well. Moreover, I believe Defendants, all of whom are governmental entities and some of whom face significant financial challenges, would find it difficult to satisfy the maximum liability that might result from trial, and therefore the settlement was fair and reasonable in that sense.  See City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d. Cir. 1974) (implied overruling on other grounds recognized by United States Football League v. Nat'l Football League, 887 F.2d 408 (2d. Cir. 1989)).

proportionate to the Plaintiffs' likelihood of success on the merits.  For those reasons, I find this settlement is in the public interest.


**CONCLUSION**

I hold the settlement is adequate, fair, reasonable, and in the public interest.  This reasoning supports my prior approval of the settlement.  I incorporate by reference my prior Order of June 5, 2005 Approving Class Action Settlement and Awarding Attorney Fee.

**IT IS SO ORDERED.**



_____s/ John Feikens_____
John Feikens
United States District Judge


Date:   _June 6, 2005_

PROOF OF SERVICE

I hereby certify that a copy of the foregoing Order was served on the attorneys and/or parties of record on June 6, 2005, by electronic means or first class U.S. Mail.

_____s/Carol Cohron_____
Case Manager
Honorable John Feikens